393 A.2d 830

**Leslie J. McCONNELL and Veronica McConnell, his wife, Appellants,**

v.

**ESTATE of C. Edmund WELLS, Deceased, and Larue S. Wells, Appellees.**

Superior Court of Pennsylvania.

Argued March 27, 1978.

Decided Oct. 20, 1978.

Craig S. Boyd, Boyertown, for appellants.

John C. Bradley, Jr., Reading, for appellees.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

HESTER, Judge:

This is an appeal from the entry of a non-suit by the Chancellor following the close of appellants' case in chief. This resulted, of course, in the dismissal of appellants' Complaint in Equity.

In granting the non-suit, the Chancellor found that appellants' complaint and the relief sought were barred by the equitable doctrine of laches. The Chancellor concluded: "The doctrine of laches should be pursued diligently when the failure of a plaintiff (the appellants herein) to exercise his rights has resulted in prejudice to the defendant (the appellees herein). This is just such a case" (T. 73a).

Thereafter, appellants filed timely exceptions to the Chancellor's opinion (sic, adjudication) which were argued before a court en banc. The court en banc opined:

We have reviewed the record and have concluded that, under the circumstances of this case, McConnells are guilty of want of due diligence in failing to submit their complaints against Wells prior to Wells' death, the hurricane of 1972, the break in the raceway and the vesting of the interest of the Butlers. In brief, there is no merit in the plaintiffs' exceptions.

It is from the court en banc's refusal of appellants' exceptions that the instant appeal has been taken.

We disagree with the action of the court en banc and order that the non-suit be taken off and the hearing be continued until fully concluded.

We adopt the Chancellor's statement of the controversy as found in the court's opinion:

This is a suit in equity wherein the plaintiffs seek injunctive and the other equitable relief. For years prior to March 15, 1888, the land of the plaintiffs and the defendants were one tract of land owned by Joseph and Susan Schultz. Sometime prior to March 15, 1888, either Schultz or his predecessor in title erected a dam on the west branch of the Perkiomen Creek which ran through the property. The object of the dam was to divert a portion of the Perkiomen Creek into a raceway which was to run parallel to the Perkiomen Creek for the purpose of furnishing water power to operate a grist mill on a portion of Schultz's property. Midway between the breast of the dam and the grist mill was a pond with a flood gate which was used to control the flow of water into the grist mill.

On March 15, 1888, Schultz conveyed a portion of the property to the plaintiffs' predecessors in title. In that conveyance Schultz reserved the right to use the millrace and the water that flowed through it for the purpose of operating the grist mill. He also reserved the right to maintain the millrace and the right to go upon the conveyed property for the purpose of repairing and maintaining the dam, race and the flood gate.

Since August 1, 1952 the plaintiffs are the owners of the land over which the millrace flows and the defendants are the owners of the adjacent property which includes inter alia the grist mill which was serviced by the millrace.

The defendants have owned the property since March 19, 1963, although title was held in a corporation (Wink Inc.) which plaintiffs acknowledge was a closely held corporation, all of the stock being registered in the name of C. Edmund Wells, the deceased defendant in this case.

The grist mill on the Wells property hasn't been used since 1961. Sometime in the mid 60's the plaintiffs constructed a high capacity centrafuge pump in the pond area of the raceway near the flood gate. The plaintiffs' purpose in installing the pump was to divert water from the raceway onto their land for the purpose of irrigating their fields and orchards. During this period of time there were various controversies between the plaintiffs and C. Edmund Wells concerning the use, misuse and repairs to the raceway and to the flood gate.

There are allegations in the complaint and in the answer which would indicate that sometime prior to 1962 there was a lively and running controversy between the plaintiffs and C. Edmund Wells concerning the raceway, the pond and the flood gate. There are allegations as to certain agreements between the plaintiff Leslie McConnell and the late C. Edmund Wells and there are allegations concerning conduct on the part of both parties about a secondary impounding dam and the reasons for repairing and replacing pilings at the flood gate in an effort to regulate the flow of the water in the raceway.

Additionally, the plaintiffs complain that, sometime prior to June 10, 1972, C. Edmund Wells caused to be erected an eight-foot high solid wooden fence on his own property, but on the boundary line between that property and the plaintiffs' immediately in front of the plaintiffs' tenant house. The plaintiffs complain that the fence has interfered with and interrupted access to the roadway by the plaintiffs and their tenants from the adjacent property.

By way of an answer the defendant alleges that the plaintiffs' tenants, guests and invitees have trespassed on the defendant's land near the right-of-way and have left abandoned automobiles, furniture and other debris on or near the right-of-way which rendered it necessary for the defendants to construct the eight-foot high wooden fence on their own property to protect their own property and right of privacy. The evidence discloses that the eight-foot wooden fence was erected on the defendants' own property but that it did prevent direct access from the right-of-way road to the tenant property.

On or about June 22 or 23 of 1972, as a result of a tropical storm known as Agnes, a large portion of both the plaintiffs' and the defendants' land was flooded and there was a break in the raceway causing water, which had been diverted at the dam in the Perkiomen Creek, to cross back over the plaintiffs' property and return to the Perkiomen Creek. The plaintiffs contend that they have repeatedly demanded C. Edmund Wells to repair the break in the raceway but that the defendants have refused to do so. On the contrary the defendants allege that, although they have no legal obligation to repair the raceway damaged as a result of the tropical storm, they had voluntarily sent contractors onto the plaintiffs' property for the purpose of repairing the dam, raceway and flood gate, but that the plaintiffs, under threat of arrest, had ordered the defendants' contractors from the property and refused permission for them to engate in the task of restoring the flood gate and the millrace.

C. Edmund Wells died February 12, 1975.

The propriety of the entry of a non-suit in a civil case in Pennsylvania has been articulated by the Supreme Court in *Engle v. Spino,* 425 Pa. 254, 256–7, 228 A.2d 745, 746 (1967):

It is hornbook law that a judgment of non-suit can be entered only in clear cases and plaintiff must be given the benefit of all evidence favorable to him, together with all reasonable inferences of fact arising therefrom, and any conflict in the evidence must be resolved in his favor:

(quoting cases). See also *Omrcanin v. Hassler,* 8 Pa. Cmwlth. 224, 225, 302 A.2d 878 (Note 1) (1973).

In granting appellees' motion for a non-suit, the Chancellor found that appellants' failure to pursue these rights had resulted in prejudice to the appellees. Continuing, the Chancellor found three "basic points of prejudice":

(a) Prior to the commencement of the suit, C. Edmund Wells died, "and as a result the surviving defendant is left without its primary witness";

(b) The rights of third parties have been affected since "without knowledge of the pending suit the widow of C. Edmund Wells entered into an agreement to convey the property to the Butlers"; and

(c) With respect to appellants' burden of proving their measure of damages, "we are of the opinion that it cannot be determined what the costs of repairs to the millrace would be in terms of today's dollars vis-a-vis 1972 dollars, nor can it be determined what additional costs have been incurred by reason of the long delay in bringing this law suit."

In applying the aforequoted standard to the entry of the non-suit by giving appellants the benefit of all evidence favorable to them together with all reasonable inferences of fact arising therefrom, we conclude that the Chancellor acted too quickly and in so doing, committed an abuse of discretion.

We restate and reaffirm the equitable maxim:

*Vigilantibus et non dormientibus subserviunt leges.* The laws aid those who are vigilant, and not those who sleep on their rights.

However, the Chancellor acted prematurely in granting appellees' Motion for Non-suit at the close of appellants' testimony.

After all the testimony is received, the Chancellor ultimately will be charged with balancing the equities involved, i. e., the fact that C. Edmund Wells died February 12, 1975, but suit was not instituted against his estate until June 9,

1975, and that the deed to the Wells' property was not recorded in the names of decedent and LaRue S. Wells, his wife,[1] until after the death of Mr. Wells. Had the suit been brought more promptly, while C. Edmund Wells was alive, he would have been available to testify.

At the appropriate time, laches, or the lack of diligence as allegedly demonstrated by appellants in instituting this action, may be found to constitute such prejudice that an award, for that reason alone, must be entered in favor of appellees.

As to the Chancellor's second basic point of prejudice— that the rights of third persons (the Butlers) have been affected, we find nothing in the evidence to substantiate this claim. The only mention of the execution of an agreement of sale for the property in question can be found in appellees' Answer and New Matter, § 38,[2] proof of which was demanded at trial in appellants' *Reply to New Matter.* Again, appellees should be required to prove the prejudicial effect of the delay on the rights of third parties.

Finally, with respect to damages and the proof thereof, appellants called two witnesses, Joseph M. Swann, a real estate broker and appraiser, and Charles G. Gabel, President of Charles G. Gabel Construction Company. Mr. Swann

1. Prior to April 1, 1970, one parcel of the property in question was titled in the name of Wink, Inc., a closely held corporation, all stock of which was held in the name of C. Edmund Wells. By deed dated April 1, 1970, Wink, Inc. conveyed said real property to C. Edmund Wells. By deed dated April 1, 1970, C. Edmund Wells and LaRue S. Wells conveyed said real property to C. Edmund Wells and LaRue S. Wells as tenants by the entireties. Said deed was recorded April 22, 1975. (Paragraph 8 of Appellees' Answer)

   By deed dated May 6, 1968, Richard Wells transferred the remaining parcel of real property (upon which is located the mill, the impounding pond, two gates and a portion of the raceway) to C. Edmund Wells and LaRue S. Wells. Said deed was recorded *April 16, 1975.* (Paragraph 9 of Appellees' Answer)

2. On April 14, 1975, LaRue S. Wells entered into an Agreement of Sale with Michael James Butler and Judith Beverlie Butler, his wife, for the sale of the premises described in Paragraph 4 and Paragraph 9 of the Plaintiffs' Complaint and also described in Deed Book Volume 1668, page 1277 and Deed Book Volume 1668, page 1280, Berks County Records.

testified to the diminution in the fair market value of the real estate in question allegedly caused by appellees' conduct, i. e., the construction of the fence and the maintenance of the raceway in a broken condition (T. 148–9a and Exhibit Q). Mr. Gabel then testified to the cost of repairing the alleged defects on said land (T. 155–6A and Exhibit R). Thus, the lower court's conclusion, after the close of appellants' case, that damages could not be determined was premature; the appellees should have been required to substantiate such a conclusion in the presentation of their case.

Accordingly, the non-suit entered at the close of appellants' case shall be removed and the trial resumed until fully concluded, at which time all equitable considerations, including but not necessarily limited to, prejudice and laches, may then rightfully be reviewed by the Chancellor.

PRICE and VAN der VOORT, JJ., dissent.

HOFFMAN, J., did not participate in the consideration or decision of this case.